# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| VICKIE R. GAMMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:12-cv-00539 |
| v. | ) | Judge Nixon / Knowles |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 12.  Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed.  Docket No. 13.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on October 14, 2008, alleging that she

had been disabled since October 31, 2007, due to severe depression, gout, diabetes, polysystic

ovary syndrome, and arthritis.  Docket No. 10, Attachment ("TR"), TR 105, 112, 133.  Plaintiff's

applications were denied both initially (TR 43, 44) and upon reconsideration (TR 45, 46).

Plaintiff subsequently requested (TR 59) and received (TR 74) a hearing.  Plaintiff's hearing was

conducted on September 10, 2010, by Administrative Law Judge ("ALJ") Donald A. Rising.  TR

25.  Plaintiff and vocational expert ("VE"), Jane Hall, appeared and testified.  *Id.*

On October 22, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 7.

Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirement of the Social Security Act through June 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since October 31, 2007, the alleged onset date (20 CFR 404.1571 *et. seq.*, and 416.971 *et. seq.*).
>
> 3. The claimant has the following severe impairments: gout, hypertension, diabetes, and history of kidney stones (20 CFR 404.1520(c) 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926).
>
> 5. Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is precluded from climbing of

ladders, ropes, or scaffolds and limited to occasional climbing of stairs, balancing, stooping, kneeling, crouching, and crawling.

6.   The claimant is capable of performing past relevant work as accounts receivable clerk.  This work does not require performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.   The claimant has not been under a disability as defined in the Social Security Act, from October 31, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 12-20.

Plaintiff filed a request for review of the hearing decision (TR 1), which the Appeals Council addressed in a letter declining to review the case (TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner.   This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The

3

purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to consider all of Plaintiff's severe impairments; (2) failed to consider Plaintiff's obesity; (3) did not properly evaluate Plaintiff's credibility as required by SSA Ruling 96-7P; (4) failed to give correct weight to the consultative examiner's report; (5) did not make a RFC finding consistent with the medical evidence; and (6) failed to consider the Third Party Function Report. Docket No. 12-1 at 1.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1.  Consideration of all Alleged Severe Impairments

Plaintiff argues that the ALJ failed to appropriately consider all of her severe impairments.  Docket No. 12-1 at 6.  Specifically, Plaintiff contends that the ALJ failed to

consider her diabetes, hypertension "with very high blood pressure readings," arthritis, polysistic ovary syndrome, and depressive disorder.[3] *Id.* Plaintiff additionally maintains that the ALJ "minimized the claimant's severe impairment of gout." *Id.*

Defendant responds that the ALJ specifically addressed Plaintiff's alleged impairments of gout, hypertension, diabetes, and history of kidney stones, but ultimately concluded that these impairments were not disabling. Docket No. 13 at 11. Specifically, Defendant highlights the ALJ's conclusion that, "despite her gout plaintiff was able to work as an accounts receivable clerk." *Id., citing* TR 19. With regard to hypertension, Defendant notes that the ALJ stated that Plaintiff had been noncompliant with medication, but had nevertheless experienced no associated symptoms beyond infrequent headaches and dizziness, with no evidence of end organ damage. *Id.* Defendant notes that, with respect to diabetes, "the ALJ noted that 'laboratory studies have shown only mildly elevated glucose levels' and plaintiff 'has had no diabetic sequellae of a concerning nature/complication or retinal, neuropathic, or nephrotic compromise, and no diabetic ketoacidosis or coma.'" *Id.* Defendant argues that, "the mere diagnosis of a condition says nothing about the intensity of the condition," and that Plaintiff bears the burden of prove regarding the severity of her conditions. *Id.* at 12, *citing Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1998).

When evaluating Plaintiff's impairments and determining that they were severe, the ALJ discussed at length Plaintiff's various complaints. Specifically, the ALJ discussed Plaintiff's history of diabetes, as follows:

---

[3] Plaintiff also contends that the ALJ failed to consider the limitations associated with Plaintiff's obesity. Docket No. 12-1 at 6. Plaintiff's allegations with regard to her obesity will be discussed in a separate statement of error below.

Records dated previously show routine follow up for benign conditions including diabetes type II with slightly elevated glucose and no mention of complications. . . Examination findings in all regards were "mild" and no additional treatments other than oral medications were recommended aside from increased exercise and weight loss.  On July 21, 2008 the claimant's diabetes was discussed wherein she was recommended to follow the South Beach diet as she "really needs to restrict carbs and sugars.  CMP showed normal kidney function.  The claimant was started back on Metformin with stabilization in kidney function and again counseled regarding diet.

. . .

Ms. Gammon is also mildly diabetic due in large part to inappropriate diet and inadequate exercise routine.  Laboratory studies have shown only mildly elevated glucose levels.  Ms. Gammon has had no diabetic sequellae of a concerning nature/complication or retinal, neuropathic, or nephrotic compromise, and no diabetic ketoacidosis or coma.

TR 14, 19, 244-46, 253-54,

With regard to Plaintiff's hypertension, the ALJ stated:

Historically, she had reported a history of. . . hypertension.  On examination, she had elevated blood pressure and was mildly uncomfortable.

. . .

. . . [A]n office note of June 5, 2008, reveals that when "adherent to treatment" the claimant had normal blood pressure of 132/82.  On May 22, 2008, the claimant was seen for complaint of dizziness upon arising and headache.  Blood pressure was within normal range and neurological findings were normal.  On April 1, 2008, Dr. McKean noted that the claimant "feels well with minor complaints" and similar commentary is repeated throughout the course of treatment.  In sum, these records demonstrate an uncomplicated medical history with waxing and waning of symptoms in all systems affected dependent on medication intake and side effect.

. . . She had as typical an elevated blood pressure of 164/92 but normal cardiopulmonary findings. There was no edema or cyanosis of the extremities, no calf pain, and no peripheral edema or

cyanosis.

TR 13-14, 231, 261-62, 266, 274, 462-63.

In assessing Plaintiff's complaints of arthritis and gout, the ALJ noted:

> Ms. Gammon reported she has arthritis in the feet, ankles, knees, and hips secondary to which she is never pain free. She stated she utilized over the counter non-steriodals previously, but now uses only Tylenol. . . Relative to daily activities, she stated she has a lady who comes in and helps her clean twice a week. She is able to use a microwave but cannot lift a skillet. She has not driven since 2008 because of painful gout.

> Emergency room records from Summit Medical Center show that the claimant has been treated over time for a variety of musculoskeletal complaints including left ankle pain in September 2006. She reported significant discomfort when walking but continued to be able to do so . . . She had a normal knee and ankle examination; however other than some mild swelling/warmth with tenderness. There were no skin changes or erythema. Distal capillary refill was less than 2 seconds. Sensation was intact. Diagnosed with acute gouty arthritis, the claimant was given Indocin. A film of the left foot dated May 5, 2006, revealed degenerative changes with soft tissue swelling but no displaced fractures or dislocations.

> Succeeding records reference similar presentation and complaint. She had gouty arthritis in the right great toe on October 28, 2006, for which she was given Colchicine and Hydrocodone. The claimant was advised to take the Colchicine until the pain stopped even through she was in the middle of a gouty flare up. . . Gout resulting in erythema of the first metatarsal precipitated treatment in March 2008. . . .
>
> . . .

> In July 2008, the claimant again presented with left foot pain and swelling. X-ray of the left foot showed no obvious bony abnormality. She was given Indocin and Tylox for pain. On October 10, 2008, she complained of bilateral knee pain stating she could barely walk. Triage found her condition to be non-emergent. The claimant's blood pressure was elevated and there was mild warmth on palpation of both knees but full range of motion. Negative Lachman's and negative anterior and posterior drawer

signs were noted. She was ambulatory but did have a limp. She was given Motrin and Lortab (Exhibit 1F).

On October 16, 2008, the claimant followed with Dr. McKean, whose records established diagnoses of benign essential hypertension, gout and history of kidney calculus. Review of systems was positive for joint pain. Examination found no distress and full orientation with clear lungs and normal heart sounds. She had normal pulses with no edema of the lower extremities. . . . Ms. Gammon also presented for ER follow up due to knee pain in July 2008, and reported intermittent problems with moderate level of pain. She stated the knee pain was relieved with Tramadol. Examination findings in all regards were "mild" and no additional treatments other than oral medications were recommended aside from increased exercise and weight loss. . . . In sum, these records demonstrate an uncomplicated medical history with waxing and waning of symptoms in all systems affected dependent on medication intake and side effect (Exhibit 2F).

On February 15, 2009, ER records demonstrate presentation for elevated blood pressure due to a change in and inability to obtain medication. . . . Another complaint was bilateral knee pain due to longstanding gout. She alleged requirement for wheelchair since November. She reported increased knee pain over a 3 month period with stiffness and much worse arthritis. . . . Examination of the extremities was normal except for the bilateral knees which had decreased complete extension secondary to slight effusion and pain. However, there was no redness or signs of obvious infection. Distal pulses were weakly palpable but, this was considered baseline rather than a deficit. Ms. Gammon received Clonidine for blood pressure and Lortab for pain. The attending physician strongly encouraged Ms. Gammon to forego use of the wheelchair as much to decrease the possibility of dependence. He noted further that use would only aggravate arthritis. She was discharged with instruction to obtain and use her anti-hypertensive as prescribed. Next, the claimant reported on May 1, 2009, and was treated for bronchitis. Salient evidence references painful feet from gout. . . . There was no edema or cyanosis of the extremeties, no calf pain, and no peripheral edema or cyanosis. . .

TR 13-14, 31-34, 210-214, 227, 231-33, 458-59, 461-63

In assessing Plaintiff's depressive disorder, the ALJ stated:

In addition to the physiological maladies described herein, the claimant also reported depressive symptoms for which she was given an anti-depressant. She declined counseling saying she was getting help through her church (Exhibit 9F).

. . .

On December 8, 2008, T. Pettigrew, Ed.D., performed a mental status examination at the request of the Administration. She arrived alone and on time for her appointment and reported that she had driven from her residence. She arrived seated in a wheelchair, but as noted, drove herself to the office building and reported that she unloaded her wheelchair and came in the wheelchair into the building. Observation revealed an obese and otherwise physically well-developed woman who reported a height of 5 feet 4 inches and weight of 240 pounds. She was appropriately dressed, clean and well-groomed without visible evidence of neglect of personal habits. Upon entering the assessment room, she was able to transfer herself from the wheelchair to another chair without assistance. She had no difficulty comprehending or responding to questions. She described her educational attainment as high school and 1 year of community college. She reported living alone and stated she stopped working due to a lay off from a temporary job assignment. When questioned concerning factors which led to her work cessation she responded that there had [been] a number of complaints on her and that she had inability to handle the stress. When questioned concerning the nature of complaints lodged against her she responded "body odor." She reported no source of income other than food stamps. When questioned concerning the nature of her alleged disability she responded she could not handle stress due to PTSD from taking care of her mother who had dementia. She also reported arthritis in the knees. She reported taking Cymbalta prescribed by a primary source but denied any formal mental health treatment. When questioned concerning changes in her status over time, she responded that she generally has a good attitude. On clinical interview the claimant demonstrated accurate orientation to time, place, and person and situation. Her speech was clearly articulated, fluent and revealed essentially average vocabulary and syntax skills. The examiner was impressed with quite prominent histrionic-like behavior. The claimant's affect was intermittently mildly labile with very brief episodes of superficial "crying." She described herself as characteristically "emotional." Her affect appeared quite shallow

throughout the interview. Although she experienced several brief and transient episodes of tearing, she also offered much spontaneous conversation, smiled and exhibited some laughter in the later stages of the interview. She denied suicidal ideation but reported that her sleep was "off" while her appetite was "okay." Ms. Gammon was able to focus her attention adequately and had no difficulty comprehending questions or requests. She demonstrated an average fund of information. She was able to perform mental calculations adequately. She presented with no evidence of mental confusion, temporal or spatial disorientation, thought preservation, circumstantiality, confabulation, aphasia, dysarthria or other organic signs. While her affect was perhaps slightly dysphoric, her presentation was most remarkable for rather prominent histrionic characteristics. She did not exhibit any pain behavior during the interview. In describing daily activities, the claimant reported that she has lived alone since the death of her mother in 2005. She stated that she requires no assistance with bathing, dressing, grooming or satisfying other personal needs. She cares for a cat and a dog. She drives independently, shops for groceries and other personal items, and manages finances. She reported that she socializes with a neighbor with whom she goes to restaurants and pursues other such activities. Her friend reciprocates by visiting. She reported that she does her routine domestic work including laundry and food preparation for herself. When asked if she is currently dating, she responded 'actually I'm right in the middle of a relationship now. He is in Florida. We just talk on the phone a lot.' During the foregoing discussion, Ms. Gammon demonstrated smiling, laughter and a significantly increased level of animation. Diagnostic impression at Axis I was dysthymic disorder, mild. At Axis II, impression was dependent and histrionic personality disorder traits. Mr. Pettigrew stated the claimant appeared to be experiencing a mild degree of depression with more prominent histrionic personality characteristics associated with numerous somatic concerns. She demonstrated her ability to adequately understand, remember and carry out simple verbal instructions. Attention, concentration, persistence and other cognitive skills appeared to be intact. She demonstrated average receptive and expressive language skills. He stated personality factors may contribute to a mild-to-moderate difficulty in adjusting to vocational stressors and responsibilities. She was considered capable of managing disability funds (Exhibit 4F).

. . .

> The claimant alleges depression; however, she has reported good response to anti-depressant medication prescribed by her primary physician. She has required no outpatient mental health treatment, emergency care, or inpatient management for an overt psychiatric disorder. She declined referral for counseling stating she was receiving benefit from church attendance. Ms. Gammon has no medically determinable "severe" mental impairment resulting in more than minimal work-related limitation of function.

TR 15-16, 19, 389-92, 395, 399, 402-03, 419, 423.

As has been demonstrated, the ALJ explicitly discussed Plaintiff's diabetes, hypertension, arthritis, gout, and depressive disorder.[4] TR 13-19. Plaintiff is, however, correct that the ALJ did not explicitly address her complaint of severe impairment due to Polycystic Ovary Syndrome. Although the ALJ did not explicitly mention Plaintiff's Polycystic Ovary Syndrome by name, the ALJ did address complications associated with that impairment, including obesity, Type II diabetes and high blood pressure. TR 14-15; *see* Polycystic ovary syndrome, http://www.mayoclinic.com/health/polycystic-ovary-syndrome/DS00423/DSECTION=complications (last visited June 7, 2013). Because the ALJ explicitly discussed the complications associated with Polycystic Ovary Syndrome, his failure to mention it by name constitutes harmless error.

As can be seen, the ALJ specifically addressed Plaintiff's alleged severe impairments in great detail, but ultimately concluded that these impairments were not disabling. This determination is within the ALJ's province. Plaintiff's claim fails.

**2. Consideration of Limitations Associated with Obesity**

Plaintiff contends that the ALJ failed to consider the limitations associated with her

---

[4] As noted, the ALJ's consideration of Plaintiff's obesity will be discussed in a separate statement of error, below.

obesity, pursuant to SSR 02-1p.

Defendant responds that, at the hearing both the ALJ and Plaintiff's counsel explicitly questioned Plaintiff regarding her height and weight such that the ALJ was aware of Plaintiff's obesity. Docket No. 13 at 12. Additionally, Defendant notes that the ALJ observed Plaintiff's obesity during the hearing. *Id.* Defendant also responds that the ALJ properly relied upon Dr. Warner's nonexamining RFC assessment, which "specifically indicated that she considered obesity in that assessment." *Id*. at 12-13.

As an initial matter, the ALJ in the case at bar explicitly acknowledged that the "observation [of Plaintiff] revealed an obese and otherwise physically well-developed woman who reported a height of 5 feet 4 inches and weight of 240 pounds." TR 15, 389. Accordingly, the record demonstrates that the ALJ was aware of Plaintiff's obesity.

Additionally, the Sixth Circuit has held that "the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity." *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412, 2006 WL 229795 (6th Cir. 2006), *citing Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). The instant ALJ discussed medical examinations that considered Plaintiff's obesity. Specifically, the ALJ discussed the July 22, 2008 report by Dr. Scott, of Summit Medical Associates Internal Medicine, which stated: "[e]xamination findings in all regards were 'mild' and no additional treatments other than oral medications were recommended aside from increased exercise and weight loss." TR 14, 253-54. As noted above, the ALJ also discussed the findings of Dr. McKean, of Summit Medical Associates Internal Medicine, who "discussed need for weight loss and exercise" (TR 244), but "established diagnoses of benign essential hypertension, gout and history of kidney calculus." TR 13.

The record establishes that the ALJ was aware of Plaintiff's obesity, and that the ALJ considered the opinion evidence when determining the extent of limitation Plaintiff's obesity may impose. Additionally, the ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and the VE. TR 18-20. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that Plaintiff's obesity does not present limitations that either constitute "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," or that are disabling. TR 16, *citing* 20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926.

### 3. Evaluation of Credibility of Plaintiff's Statements

Plaintiff contends that the ALJ did not properly assess her credibility pursuant to SSR 96-7P. Docket No. 12-1 at 10-12. Specifically, Plaintiff argues that the ALJ erroneously failed to explicitly state the weight he gave to Plaintiff's statements and the reasons for that weight. *Id.* at 11. Plaintiff maintains that the ALJ made only a "conclusory statement" regarding his consideration of Plaintiff's allegations and therefore committed a material error. *Id.* at 11. Plaintiff also contends that the ALJ erroneously used the fact that Plaintiff "ha[d] been able to perform some activity on a very minimal basis" to detract from her credibility. *Id.* at 11. Plaintiff cites Sixth Circuit case law for the proposition that the fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this applicant possesses the ability to engage in substantial gainful activity. *Id.* at 11 (*citing Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967).

Defendant responds that the ALJ properly determined that Plaintiff's allegations were not

fully credible to the extent her allegations were inconsistent with her established RFC, and that

the ALJ's determination was supported by the medical evidence of record. Docket No. 13 at 8.

Defendant highlights the December 2007 report by Dr. McKean, who "noted that 'the patient

feels well with minor complaints.'" *Id.*, *quoting* TR 284. Defendant also notes that, although

Plaintiff claimed that she required her wheelchair due to gout in her feet, she admitted that the

wheelchair was not prescribed. *Id.*, TR 28. Defendant further notes that psychological examiner

Dr. Pettigrew reported that Plaintiff drove herself to his examination and unloaded the

wheelchair without assistance. *Id.*, TR 389. Defendant additionally states that, in February

2009, Plaintiff was told to take her gout medication and participate in a "walking program"; that,

in April 2010, Plaintiff's main complaint was fatigue; and that, her April 2010 "alleged ankle

pain due to gout was noted only to be moderate in severity and of one week duration." *Id.* at 9,

TR 417, 421-22.

Defendant reiterates that Plaintiff suffered from gout before she became disabled in

October 2007 and that the ALJ noted that, despite her gout, Plaintiff was able to work as an

accounts receivable clerk. *Id.* at 9, TR 19. Defendant also notes that the ALJ expressed doubt in

Plaintiff's credibility regarding her testimony that she could not work since October 2007

"simply because of the pain I'm in." *Id.* at 9, *quoting* TR 30. Defendant highlights that Plaintiff

had stated in an earlier adult disability report that she stopped work because she "became too

depressed" and because "the temp service [she] was working for would not find work" for her.

*Id.* at 10, *quoting* TR 133. Defendant highlights Plaintiff's statement that she had not "been

fortunate enough to find somebody that would hire [her]" since 2006, yet earning records

indicate that she worked for Amtemps in 2007, with earnings amounting to substantial gainful

activity. *Id.* at 9, *quoting* TR 30-31, TR 122, 127.

Finally, Defendant highlights that the ALJ noted inconsistencies between Plaintiff's statements describing her daily activities and her reported activities in an adult function report. *Id.* at 10. Plaintiff testified that she had not driven a car since 2008, could only cook using the microwave, and had a maid twice weekly help her clean and wash clothes. *Id.*, *citing* TR 33-34. Defendant notes that in an earlier adult function report, Plaintiff indicated that she does grocery shopping "at least" twice monthly, cleans, does laundry, cooks breakfast and dinner, uses a stove or oven to cook a casserole, and takes care of her cat. *Id.*, *citing* TR 175-178.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations:

> [S]ubjective allegations of disabling symptoms. . . cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found that:

> . . . [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Dr. Warner's] residual functional capacity assessment. In terms of the claimant's alleged back pain, I find no evidence to support a finding of total disability based on that or any other physiological disorder. The claimant's treatment has been conservative in nature with no referrals for surgery or other aggressive measures. All clinical and diagnostic examinations have been relatively unremarkable with no documentation of any musculoskeletal abnormality which could reasonably be expected to result in the degree of pain alleged. It should be noted that, despite the intensity of her complaints, the claimant does not participate in any physical or rehabilitative therapies. The claimant does not require the use of ambulatory aide or back brace and wheelchair is not prescribed and its use was discouraged. The claimant has not required any undue emergency

care or inpatient management for pain control and he [*sic*] does not utilize a pain control device such as a TENS unit. The claimant's pain is controlled through the use of oral analgesics only. The claimant has never been refereed [*sic*] for pain management evaluation and she has never required treatment with injection type therapies such as epidural steriods or the administration of other intramuscular or intravenous pain medications.

The claimant has been treated over the years and preceding the alletged [*sic*] onset of disability for gout. The longitudinal evidence suggests some component of noncompliance with prophylactic medications inasmuch as both Allopurinal and Colchicine has been prescribed. While the claimant's report that Allopurinal was not recommended during a flare up, she has apparently failed to adhere to a regimen of oral medications once recovered. In any event, even during flare-ups, clinical findings have been mild and unsupportive of her allegations as to pain severity. She has at all times responded to acute interventions which have been great in number through the emergency room setting. She has no clinical/diagnostic evidence of an overt bony or soft tissue abnormality unrelated to gout flaring. Noteworthy also, Ms. Gammon's employment ended for reasons unrelated to her medical conditions.

Relative to hypertension, again noncompliance with medication has been repeatedly referenced by physicians and although the record does show some fairly high diastolic numbers, systolic pressures have been only mildly elevated. Even so, the claimant has experienced no associated symptoms other than infrequent/ intermittent headache and dizziness. At no time has she reported evidence of end organ damage. Ms. Gammon is also mildly diabetic due in large part to inappropriate diet and inadequate exercise routine. Laboratory studies have shown only mildly elevated glucose levels. Ms. Gammon has had no diabetic sequellae of a concerning nature/complication or retinal, neuropathic, or nephrotic compromise, and no diabetic ketoacidosis or coma.

The claimant alleges depression; however, she has reported good response to anti-depressant medication prescribed by her primary physician. She has required no outpatient mental health treatment, emergency care, or inpatient management for an overt psychiatric disorder. She declined referral for counseling stating she was receiving benefit from church attendance. Ms. Gammon has no

> medically determinable "severe" mental impairment resulting in
> more than minimal work-related limitation of function.
>
> . . . Relative to subjective allegations credibility is diminished by
> inconsistencies, viz., she reported she was laid off because the
> work ran out while she reported otherwise on another occasion
> there had been complaints with respect to body odor.  She reported
> a very restricted functional ability at the hearing while elsewhere
> outlining a wide range of activities.  She stated she had not driven
> since 2008 but in a function report of March 2009 she stated that
> she drives a car when she leaves the house.

TR 18-19, 33, 133, 178, 261-62, 419, 463.

Contrary to Plaintiff's assertion that the ALJ erroneously relied on evidence that Plaintiff "ha[d] been able to perform some activity on a very minimal basis," as can be seen in the quoted passages above, the ALJ carefully considered the evidence of record, including inconsistencies in Plaintiff's statements.  While Plaintiff is correct that "[t]he fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this applicant possesses the ability to engage in substantial activity," the ALJ based his credibility decision on the medical and testimonial evidence recounted above, not merely on her reported daily activities.

Regarding Plaintiff's daily activities specifically, in addition to the quoted passages above, the ALJ also discussed her activities of daily living as follows:

> In activities of daily living, the claimant has mild restriction.  The
> claimant reported to Mr. Pettigrew that she lives alone and has
> done so since the death of her mother in 2005.  She stated that she
> requires no assistance with bathing, dressing, grooming or
> satisfying other personal needs and that she cares for a cat and a
> dog.  She stated that she drives independently.  She reported that
> she does her routine domestic work including laundry and food
> preparation for herself.  In a pre-hearing function report, the
> claimant reported that she performs a fairly wide and full range of
> household chores, meal preparation, and self care.  Se [*sic*] also

reported caring for several pet cats. . . . Ms. Gammon reported that she shops for groceries and other personal items.  She reported that she socializes with a neighbor with whom she goes to restaurants and pursues other such activities. Her friend reciprocates by visiting.  When asked if she is currently dating, she responded, 'actually I'm right in the middle of a relationship now.  He is in Florida.  We just talk on the phone a lot.'  Ms. Gammon reported that she attends church and speaks with friends on the telephone as well as receiving visits. . . . The claimant demonstrated good attention and concentration during the psychological evaluation. She told Mr. Pettigrew that she manages her own finances.  In the aforementioned function report, the claimant stated that she passes time by reading, watching television, and performing needlework. . . . .

TR 17, 175-79, 389-91 (citation omitted).

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 17.  It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on findings that were inconsistent with Plaintiff's allegations.  This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination.  *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).  An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility.  *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.  *See Walters,* 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler,*

742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all of the medical and testimonial evidence of record, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the. . . residual functional capacity assessment." TR 18. The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 4. Weight Accorded to Consultative Examiner's Report

Plaintiff argues that the consultative examination by Dr. Mehta was the "only medical source statement in the record"; it was accurate; and it should have been given controlling weight by the ALJ. Docket No. 12-1 at 12. Plaintiff also argues that the ALJ failed to provide sufficient reasons for not according Dr. Mehta's opinion great weight. *Id.*

Defendant argues that, contrary to Plaintiff's contention, Dr. Mehta's was not "the only medical source statement in the record." Docket No. 13 at 13 (*quoting* Docket No. 12-1 at 12). Specifically, Defendant highlights the reports of Dr. Warner and Dr. Allison. *Id.* Defendant notes that the ALJ relied on Dr. Warner's report, which was also affirmed by Dr. Allison, and contends that an ALJ can give more weight to the opinion of one State Agency consultant than to another. *Id.* Defendant maintained that the ALJ explicitly reasoned that he did not accept Dr.

Mehta's opinion that Plaintiff was incapable of even sedentary work because Dr. Mehta's clinical findings of no acute distress, full ranges of extremity motion, absence of musculoskeletal tenderness, normal gait and normal reflex, motor and sensory findings did not support that conclusion. *Id.*, TR 19.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
. . .

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[5]  *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The ALJ in the case at bar ultimately determined that:

5. Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is precluded from climbing of ladders, ropes, scaffolds and limited to occasional climbing of stairs, balancing, stooping, kneeling, crouching, and crawling.

TR 18, 407-14 (bolding omitted).  The ALJ's determination mirrors that of State Agency consultant, Dr. Warner. *See* TR 407-14.  Another State Agency consultant, Dr. Allison, affirmed

---

[5] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

Dr. Warner's assessment. TR 415. As can be seen, contrary to Plaintiff's contention, Dr. Mehta

was not the "only medical source statement in the record"; the ALJ was therefore not bound to

accord it controlling weight.

In his decision, the ALJ explained his rationale for according the opinion of Dr. Mehta

less weight:

> As for the opinion evidence, no treating source has offered opinion
> as to residual function. I considered Dr. Mehta's assessment that
> claimant was incapable of even sedentary exertion but his clinical
> findings of no acute distress, full ranges of extremity motion,
> absence of musculoskeletal tenderness, normal gait and normal
> reflex, motor and sensory findings do not support the conclusion;
> and I note that the State agency nonexamining medical consultant
> rejected that conclusion as well. In sum, I consider the above
> residual functional capacity assessment supported by the
> substantial weight of clinical and diagnostic evidence of record. . .

TR 19, 384-85 (citations omitted).

As the ALJ noted, Dr. Mehta's opinion contradicts other substantial evidence in the

record. As the Regulations state, the ALJ is not required to give controlling weight to a

physician's evaluation when that evaluation is inconsistent with other substantial evidence in the

record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is

contradictory evidence, the physician's opinion is weighed against the contradictory evidence

under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final

decision regarding the weight to be given to the differing opinions lies with the Commissioner.

20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr.

Mehta's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

**5. RFC Finding is Consistent with Medical Evidence**

Plaintiff argues that the ALJ's RFC finding was not consistent with the medical evidence.

Specifically, Plaintiff contends that the ALJ "only considered the limited parts of the evidence that supported a finding of not disabled," while 20 CFR 416.045(a)(1) requires that the ALJ assess all relevant evidence. Docket No. 12-1 at 8. Plaintiff contends that her testimony and treatment records demonstrate that she functions at an RFC lower than that found by the ALJ. *Id.* at 9. Plaintiff highlights that she uses a wheelchair to ambulate secondary to her pain level associated with her gout and arthritis. *Id.* Plaintiff recounts her arguments discussed above that the ALJ failed to consider her obesity, and failed to seriously consider her diabetes, hypertension with very high blood pressure, and acute gouty arthritis. *Id.* Plaintiff argues that Dr. Mehta, did, however, consider those ailments, assigned Plaintiff a less-than-sedentary RFC, and concluded that Plaintiff was not capable of working a full 8-hour work day. *Id.* Plaintiff again claims that the ALJ failed to provide sufficient reasons for not giving "great weight" to Dr. Mehta's opinion. *Id.*

Defendant responds that the ALJ's RFC was properly supported by the medical evidence of record. Docket No. 13 at 12. Defendant notes that "Dr. Warner's postural limitations were. . . identical to the ALJ's established RFC." *Id.* at 13, *citing* TR 18, 408. Defendant also reiterates that, as admitted by Plaintiff, no physician prescribed the use of a wheelchair. *Id.*, TR 28.

As has been demonstrated throughout the previous statements of error, contrary to Plaintiff's assertion that the ALJ "only considered the limited parts of the evidence that supported a finding of not disabled," the ALJ considered the medical records as a whole and discussed the relevant factors in reaching his RFC finding. For the reasons discussed above, the ALJ properly considered the impairments alleged by Plaintiff, properly evaluated the effect of Plaintiff's obesity, properly determined that Plaintiff's allegations were not fully credible, and

properly discounted the opinion of Dr. Mehta. With regard to Plaintiff's repeated emphasis that she uses a wheelchair, the ALJ discussed that Plaintiff had not been prescribed a wheelchair, and that its use was specifically discouraged by Dr. Nguyen, of Summit Medical Center. TR 12, 28-29, 463.

After considering the medical and testimonial evidence of record, the ALJ accepted the assessment of Dr. Warner. TR 18, 407-410, 413. Dr. Warner determined that Plaintiff was capable of light exertional work, with an ability to occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk or sit about 6 hours in an 8-hour day, sit about 6 hours in an 8-hour day, and push and/or pull without limitation. TR 18, 407. Dr. Warner opined that Plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, but could never balance. TR 408. Dr. Warner found that Plaintiff did not have any manipulative, visual, communicative, or environmental limitations. TR 409-10. In the "additional comments" section of her assessment, Dr. Warner explicitly noted Plaintiff's alleged arthritis, gout, depression, high blood pressure, polycystic ovary syndrome, and obesity, demonstrating that she was aware of, and considered, Plaintiff's ailments in her findings. TR 413-14. The ALJ's acceptance of Dr. Warner's opinion incorporated the findings she determined after considering all of Plaintiff's ailments.

In making his RFC determination, the ALJ properly evaluated all relevant medical and testimonial evidence, properly considered Plaintiff's alleged impairments (including obesity), properly evaluated Plaintiff's credibility, and accorded appropriate weight to the medical opinions of record. Accordingly, Plaintiff's argument fails.

## 6. Consideration of Third Party Function Report

Plaintiff maintains that the ALJ erroneously failed to consider the November 4, 2008

Third Party Function report completed by Plaintiff's uncle, Johnny W. Roberts. Docket No. 12-1 at 13. Plaintiff argues that the ALJ should have considered it, because the Third Party Function report was consistent with Plaintiff's Pain Questionnaires. *Id.* at 13-14, 167-68, 169-70.

Defendant responds that, at the hearing, the ALJ admitted Exhibit 3E, containing, *inter alia*, the Third Party Function report, and that, at the hearing's conclusion, the ALJ stated that he would "look through the records again" and "re-review the testimony." Docket No. 13 at 14; TR 28, 42. Defendant argues that "the ALJ is not required to reference and discuss every piece of evidence in his decision, especially when the evidence is duplicative." Docket No. 13 at 14, *citing Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989) (remaining citations omitted).

While Plaintiff is correct that the ALJ did not explicitly discuss Mr. Roberts' Third Party Function report in his decision, the hearing transcript shows that the ALJ was aware of Mr. Roberts' report and that the ALJ was going to review the testimony and records again after receiving it. While the ALJ has a duty to develop the record in such a way so as to allow for meaningful judicial review, Plaintiff fails to cite any support for her notion that the ALJ must specifically discuss every piece of evidence in the record. Significantly, Plaintiff argues that the ALJ should have considered Mr. Roberts' report because it was consistent with her statements, but, as has been discussed above, the ALJ discounted the credibility of Plaintiff's statements for reasons that were well-explained and well-supported by the evidence of record. Because the ALJ properly deemed Plaintiff's statements to be less than fully credible, the ALJ was not bound to accept the statements of Plaintiff's uncle.

When discussing the evidence and developing the record, the ALJ must state "the

findings of fact and the reasons for the decision" and the decision must be supported by substantial evidence. As the Sixth Circuit has noted, "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Gooch v. Secretary,* 833 F.2d 589, 592 (6th Cir. 1987). The ALJ discussed the medical and testimonial evidence of record, specifically articulated his findings of fact, and, using the information in the record, provided the rationale for his decision. TR 12-20. The ALJ's decision was supported by substantial evidence Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge